IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No: 09-cv-00758-REB-CBS

CLAIR LLOYD BEAZER,
    Applicant,
v.

WARDEN SUSAN JONES OF COLORADO STATE PENITENTIARY, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO, JOHN SUTHERS,
    Respondents.

---

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

Magistrate Judge Craig B. Shaffer

    This civil action comes before the court on Mr. Beazer's Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Petition") filed *pro se* on April 3, 2009 (doc. # 1). Pursuant to the July 9, 2009 "Order Referring Habeas Petition . . ." (doc. # 13), the case was referred to the Magistrate Judge to, *inter alia*, "[p]rovide a report and recommendation with regard to the petition." The court has reviewed the Petition, Respondent's Answer (filed August 31, 2009) (doc. # 23), the pertinent parts of the state court record, the entire case file, and the applicable law and is sufficiently advised in the premises. The court recommends that the Petition be denied and that this civil action be dismissed with prejudice.

I.    Statement of the Case

    Mr. Beazer was convicted on May 18, 2004 in Park County District Court Case No. 2003CR25 on a jury verdict finding him guilty of third degree assault, a

1

misdemeanor in violation of § 18-3-204, C.R.S. and second degree assault, a class four felony in violation of § 18-3-203(1)(g), C.R.S. (*See* State Court Record, Case File at pp. 126-27, 134). The trial court subsequently vacated the third degree assault conviction and sentenced Mr. Beazer to ten years in prison. (*See id.* at p. 134).

On February 15, 2007, the Colorado Court of Appeals affirmed the judgment of conviction on direct appeal. *See People v. Beazer*, No. 04CA2117 (Colo. App. Feb. 15, 2007) (not published pursuant to C.A.R. 35(f)) (Appendix C to Respondents' Answer (doc. # 23-3)). On October 29, 2007, the Colorado Supreme Court denied certiorari review. (*See* No. 07SC622 (Appendix D to Respondents' Answer) (doc. # 23-4)). The Colorado Court of Appeals issued the mandate on November 2, 2007. (*See* Appendix A to Respondents' Answer (doc. # 23-1) at p. 10 of 12).

On February 22, 2008, Mr. Beazer filed through counsel a postconviction motion for sentence reduction pursuant to the Colorado Rules of Criminal Procedure, Crim. P. 35(b). (*See* Appendix A to Respondents' Answer (doc. # 23-1) at p. 10 of 12; *see also* State Court Record, "Combined Motion for Sentence Reconsideration, Pursuant to Crim P. 35B and Modification of Mandatory Sentence for a Violent Crime Pursuant to § 18-1.3-406," "Additional Documents" (filed April 21, 2008), and "Supplement B" (filed April 28, 2008)). On May 5, 2008, the trial court granted the postconviction motion and reduced Mr. Beazer's sentence to nine years. (*See* Appendix A to Respondents' Answer (doc. # 23-1) at p. 11 of 12; *see also* State Court Record, Judgment of Conviction dated May 5, 2008).

On April 3, 2009, Mr. Beazer filed the instant Petition, asserting four claims for relief. (*See* doc. # 1). On July 2, 2009, Senior Judge Weinshienk dismissed Mr.

2

Beazer's Claims Three and Four as procedurally barred. (*See* "Order to Dismiss in Part and to Draw Case to a District Judge and to a Magistrate Judge" (doc. # 11)). Thus, the only claims remaining before the court are Mr. Beazer's Claims One and Two.

II. One-Year Limitation Period for Filing Application for Federal Habeas Relief

Respondents do not challenge the timeliness of the Petition under the one-year limitation period set forth in 28 U.S.C. § 2244(d)(1). (*See* Pre-Answer Response (doc. # 9) at p. 5 of 13).

III. Exhaustion of State Remedies and Procedural Default

"A threshold question that must be addressed in every habeas case is that of exhaustion." *Harris v. Champion*, 15 F.3d 1538, 1554 (10th Cir. 1994). Before a state prisoner may raise a federal constitutional claim attacking his state conviction in a federal habeas corpus proceeding pursuant to 28 U.S.C. § 2254, he or she must have first exhausted state remedies and provided the state courts with a fair opportunity to apply controlling legal principles to facts bearing on the constitutional claims. 28 U.S.C. § 2254(b)(1). Respondents concede that Mr. Beazer exhausted his Claims One and Two, the only claims remaining before the court. (*See* Respondents' Pre-Answer Response (doc. # 9) at p. 8 of 13 ("Applicant thus appears to have exhausted Claims One and Two.")).

IV. Standard of Review

Mr. Beazer filed this habeas proceeding after the April 24, 1996 effective date of

the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Consequently, federal review of the Petition is governed by the standards set out in 28 U.S.C. § 2254(d), as amended by the AEDPA. *See Price v. Vincent*, 538 U.S. 634, 638 (2003) ("A habeas petitioner whose claim was adjudicated on the merits in state court is not entitled to relief in federal court unless he meets the requirements of 28 U.S.C. § 2254(d)"). Section 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. 2254(d). The Supreme Court has construed the language of § 2254(d)(1):

> . . . a decision by a state court is "contrary to" our clearly established law if it "applies a rule that contradicts the governing law set forth in our cases, or if it "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent. . . ."

*Price*, 538 U.S. at 640. In determining whether the state court decision "involved an unreasonable application of clearly established Federal law" under § 2254(d)(1),

> a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly. Rather, it is the habeas applicant's burden to show that the state court applied [that case] to the facts of his case in an objectively unreasonable manner."

*Price*, 538 U.S. at 640-41 (internal quotation marks and citations omitted).

The Supreme Court has interpreted § 2254(d)(2) to mean that "a decision

4

adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockerell*, 537 U.S. 322, 340 (2003). When applying § 2254(d)(2), "the factual issues decided by the [state] court are presumed to be correct and [Mr. Beazer] bears the burden of rebutting this presumption by clear and convincing evidence." *Le v. Mullin*, 311 F.3d 1002, 1010 (10th Cir. 2002) (citing 28 U.S.C. § 2254(e)(1)). *See also Foster v. Johnson*, 293 F.3d 766, 776-77 (5th Cir. 2002) ("To establish that habeas relief is warranted on the § 2254(d)(2) ground . . . a petitioner must rebut by clear and convincing evidence the § 2254(e)(1) presumption that a state court's factual findings are correct.") (citations omitted).

V.    Analysis

Mr. Beazer alleges in his Claims One and Two that the trial court violated his right to due process by failing to impose an effective sanction for the prosecution's violation of the rules of discovery and its failure to provide potentially exculpatory evidence and that the prosecution's loss of potentially exculpatory evidence violated his right to due process. (*See* Petition (doc. # 1) at p. 5-7 of 17).

On March 6, 2003, Mr. Beazer engaged in a physical altercation with fellow inmate Mr. Wheeler in Pod-A of the Park County Jail. Pod-A was rowdy, as inmates on the upper level were throwing miscellaneous items, such as food and toilet paper, on inmates on the lower level. Mr. Beazer, who was an inmate on the lower level, went

5

upstairs and confronted Mr. Wheeler and Mr. Cain[1], a friend of Mr. Wheeler and fellow inmate.  The initial confrontation was brief and Mr. Wheeler and Mr. Cain left Pod-A for janitorial duties.  When they returned, Mr. Beazer again went upstairs and this time fought Mr. Wheeler.  The fight was broken up by prison guards, but only after both Mr. Beazer and Mr. Wheeler sustained injuries.  (*See* State Court Record Vol. 10, Trial Transcript of May 18, 2004 at pp. 257-266).  Because of the severity of his injuries, Mr. Wheeler was taken to a hospital off-site.  (*See id.* at p. 282).

A few days after the fight, Deputy Fikjes[2] videotaped interviews of four inmates who were in Pod-A during the altercation between Mr. Beazer and Mr. Wheeler.  The videotape was subsequently lost and Mr. Beazer was only made aware of the lost tape a few days before his trial.  At trial, Deputy Fikjes testified that Mr. Cain was interviewed on the videotape, but he could not recall the names of the other three prisoners.  (*See* State Court Record Vol. 9, Trial Transcript of May 17, 2004 at p. 133).  Because the tape was lost, as a discovery sanction the district court judge barred the prosecution from calling Mr. Cain to testify and from introducing any of his statements.  (*See* State Court Record Vol. 10 at pp. 247-48).

Despite this sanction, Mr. Cain's excited utterances were admitted at trial during Deputy Flint's testimony.  On direct examination, Deputy Flint testified that while he was

---

[1]The record inconsistently refers to the fellow inmate and friend of Mr. Wheeler as Mr. "Cain," Mr. "Kane," and Mr. "C." This brief refers to this person solely as Mr. Cain.

[2]The record inconsistently refers to the deputy who took interviews after the altercation as Mr. "Fikjes" and Mr. "Ficus." This brief refers to this person solely as Mr. Fikjes.

6

attending to Mr. Wheeler, Mr. Cain wept and shouted, "its not fair" and "he (referring to Mr. Beazer) tried to kill him (referring to Mr. Wheeler)." (*See id.* at Vol. 10 pp. 276-78). Distinguishing the report Mr. Cain gave to Deputy Fikjes during a post-incident interview from what Deputy Flint overhead while Mr. Cain watched over his badly hurt friend, the trial judge allowed the jury to hear Mr. Cain's excited utterances as a hearsay exception. (*See id.* at pp. 284-85).

Mr. Beazer did not testify at trial and chose not to call Mr. Cain to testify. However, Mr. Beazer did call two other inmate witnesses to testify on his behalf. One witness claimed the fight was short and did not recall how it started; the other witness supported Mr. Beazer. (*See* doc. # 23-3 at pp. 6-7 of 15).

In Claim Two, Mr. Beazer alleges that the videotape lost by the state contained exculpatory evidence. (*See id.* at p. 6 of 17). According to Mr. Beazer, because the videotape contained eye-witness interviews, the prosecution had a duty to preserve the videotape. (*See id.*). Mr. Beazer asserts that the prosecution's loss of allegedly exculpatory evidence amounts to a due process violation. (*See id.*).

The trial court held that the loss of the videotaped witness statements was not a due process violation because Mr. Beazer could not prove the missing evidence was exculpatory and he had access to comparable evidence. (*See* State Court Record Vol. 9 at pp. 142-52). The Colorado Court of Appeals affirmed Mr. Beazer's conviction, finding no violation of Mr. Beazer's due process rights and no erroneous application of the law:

> The Due Process Clause of the Fourteenth Amendment mandates that the state disclose to criminal defendants favorable evidence that is material to either guilt or punishment. U.S. Const. Amend 14; *People v.*

> *Braunthal*, 31 P.3d 167 (Colo. 2001).
>
> The state's failure to preserve evidence violates due process if (1) the evidence was destroyed by state action, (2) the evidence possessed exculpatory value that was apparent before it was destroyed, and (3) the defendant is unable to obtain comparable evidence by other reasonably available means. *People v. Braunthal*, *supra*; *People v. Baca* 109 P.3d 1005 (Colo. App. 2004). Exculpatory evidence includes evidence that bears on the credibility of a witness the prosecution intends to call at trial. *People v. Braunthal*, *supra*.
>
> If the evidence was not apparently exculpatory before it was destroyed, due process is violated only if the police acted in bad faith. The trial court's finding on these issues will not be disturbed if supported by the record. *People v. Braunthal*, *supra*; *People v. Baca*, *supra*.
> . . .
> We reject defendant's assertion that the prosecution's loss of the videotaped interview met all three elements of the *Braunthal* test.
>
> Even if the evidence was destroyed by state action, nothing in the record indicates it had apparent exculpatory value before it was lost. At the sanctions hearing, no one, including the deputy, testified that [the witnesses] said anything exculpatory on the videotape.
>
> As for the defendant's ability to obtain comparable evidence, the record contains testimony by the victim and two other inmates. The victim could not remember what had occurred, and one inmate testified that the fight was brief and he could not tell what happened. The other inmate provided testimony supporting the defendant.
>
> Defendant presented no evidence that the prosecution acted with a flagrant disregard or dereliction of the discovery obligation. Because there is no evidence of bad faith, we conclude defendant was not denied due process.

(*See People v. Beazer* (doc. # 23-3) at pp. 4-7 of 15).

Colorado's *Braunthal* test mirrors the Tenth Circuit and Supreme Court standards for determining whether lost evidence violates due process. In order for Mr. Beazer to show his Fourteenth Amendment due process rights were violated during his criminal trial proceedings, he must demonstrate he was denied access to exculpatory evidence. *See Brady v. Maryland*, 373 U.S. 83 (1963). "To establish that the Government deprived him of due process by destroying potentially exculpatory evidence, [Mr. Beazer] must show that 1) the evidence destroyed was potentially exculpatory and 2)

the government acted in bad faith destroying it." *United States v. Beckstead*, 500 F.3d 1154, 1158 (10th Cir. 2007). The Supreme Court in *Arizona v. Youngblood* held similarly, stating, "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." 488 U.S. 51, 58 (1988). Additionally, the Supreme Court has ruled that if a defendant has access to comparable evidence, no due process violation has occurred. *See California v. Trombetta*, 467 U.S. 479, 488-89 (1984).

First, Mr. Beazer's characterization of the missing evidence as exculpatory is entirely speculation. On this record, nothing is offered by Mr. Beazer to demonstrate that the lost evidence was exculpatory. Deputy Fikjes, who took the lost interviews, stated while he did not remember who was interviewed and exactly what was said, he did recall that "the testimonies pretty much ran along the same lines that Mr. Beazer was the aggressor in the situation that transpired." (*See* State Court Record Vol. 9 at p. 128). Additionally, the district court stated it was "not going to speculate or assume that these (the lost witness interviews) were exculpatory statements." (*See id.* at p. 151).

Second, no evidence was offered at trial that the prosecution acted in bad faith. The district court ruled, "it does not appear. . . to be intentional on the part of the detention facility, but it certainly is the kind of carelessness that this court believes should not have occurred." (*See* State Court Record Vol. 10 at p. 248). Unintentional mistake or error by the detention facility or prosecution is not enough to demonstrate bad faith. *See Youngblood*, 488 U.S. at 58. Mr. Beazer provides no grounds for the court to find bad faith in this instance.

Lastly, Mr. Beazer had access to comparable information. Mr. Beazer was not

9

precluded from calling the inmates who were present during the altercation or from testifying himself. Mr. Beazer offered testimony from two witnesses to the altercation. Additionally, Mr. Beazer and his counsel could have called Mr. Cain as a witness to attempt to refute the excited utterances admitted in Deputy Flint's testimony; they elected not to.

To prove a due process violation, Mr. Beazer must show more than a "mere possibility" that the lost evidence would have helped his defense. *United States v. Agurs*, 427 U.S. 97, 109-10 (1976). Rather, Mr. Beazer must demonstrate a "reasonable probability" that the lost witness tape would have changed the outcome of his trial. *United States v. Burke*, 571 F.3d 1048, 1053 (10th Cir. 2009). Because there is no evidence that the lost evidence was exculpatory, that the prosecution acted in bad faith, or that Mr. Beazer was denied access to comparable witness testimony, no due process violation occurred. Mr. Beazer offers only speculation that the outcome of his trial would have been different with access to the witness tapes; speculation is not enough for the court to find a due process violation. *See Agurs*, 427 U.S. at 109-10.

In Claim One, Mr. Beazer alleges that the district court failed to impose proper sanctions for the prosecution's loss of witness testimony during his trial. (*See* Petition (doc. # 1) at p. 5 of 17). According to Mr. Beazer, because Mr. Cain's witness interview was lost, Mr. Beazer had no way of disputing Mr. Cain's excited utterances. (*See id.*). Mr. Beazer contends that the admission of Mr. Cain's excited utterances coupled with the loss of witness interviews violated his due process rights, requiring reversal of his conviction and a new trial. (*See id.* at p. 16 of 17).

The trial court ruled that barring the prosecution from calling Mr. Cain to testify

was a proper and sufficient discovery sanction. (*See* State Court Record Vol. 10 at pp. 247-48). The Colorado Court of Appeals upheld the trial court's sanction, holding:

> Crim P. 16 governs discovery in a criminal proceeding and outlines the procedures the parties are required to follow. Certain information must be disclosed without a formal request, and Crim 16(v)(a) and related rules provide for sanctions in the event that the discovery rules are not followed. *People v. Pagan*, P.3d (Colo. App. Nos. 04CA0527 & 04CA0873, Sept. 21, 2006).
> If at any time during the proceedings it is brought to the court's attention that a party has failed to comply with this rule, the court may grant a continuance, prohibit the party from introducing the material not disclosed, or enter such other order as it deems just under the circumstances. The rule gives the trial court broad discretion in determining the appropriate remedies for violations. *People v. Pagan*, *supra*.
> When exercising its discretion in fashioning remedies for violations of Crim P. 16, the court should impose the least severe sanction that will ensure full compliance with the discovery rules *People v. Pagan*, *supra*.
> Here, the trial court refused to speculate or assume that the videotape had exculpatory statements and it precluded C. or any other person form testifying as to its contents. However, the court denied defendant's motion to dismiss stating, "[T]he number two video as the Court will refer to it, had not been produced and . . . it may show exculpatory evidence and certainly would have been useful to the Defense with regard to any of the witnesses that may be called here for purposes of cross-examination."
> Because the trial court is required to impose the least severe sanction in fashioning remedies for violations of Crim O. 16, there was no evidence that the videotape had nay apparent exculpatory value, and defendant was allowed the opportunity to examine witnesses, we find no abuse of discretion by the court.

(*See People v. Beazer* (doc. # 23-3) at pp. 7-9 of 15).

The Supreme Court has recognized that, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Here, the state court's discovery sanction pursuant to Colorado

11

Rules of Criminal Procedure Crim P. 16 is a state law matter.  A state court's determination may only be reviewed by a federal court when the action or inaction by the state or lower court was so egregious that it "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  See *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (U.S. 1974). Nothing in the record suggests an egregious state action that warrants intervention by the federal courts.


VI.     Conclusion

Mr. Beazer has not demonstrated that he was denied due process.  Because the evidence lost was not been shown to be exculpatory in Claim Two, the district court's discovery sanction was a state law matter unreviewable by a habeas court in Claim One.  Mr. Beazer failed to overcome his burden to prove that the state courts' rulings were contrary to federal law or "objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockerell*, 537 U.S. 322, 340 (2003).


Accordingly, IT IS RECOMMENDED that the Application for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Petition") filed on April 3, 2009 (doc. # 1) be DENIED and that this civil action be DISMISSED with prejudice.


**Advisement to the Parties**

Within *fourteen days* after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and

recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated at Denver, Colorado this 15th day of July, 2010.

BY THE COURT:


　　s/Craig B. Shaffer
United States Magistrate Judge